Oscar S. Heyer *vs.* V. Barletta Co.

Suffolk.        May 13, 1936. — June 30, 1936.

Present: Crosby, Pierce, Donahue, Lummus, & Qua, JJ.

*Contract*, What constitutes, Of employment.   *Frauds, Statute of.*

Evidence, at the trial of an action for breach of an alleged oral contract to employ the plaintiff in a certain capacity, which was in conflict as to the character of the employment, required submission to the jury of the question, whether there was such a meeting of minds as to constitute a contract; and a statement in writing on that point made by the plaintiff before the making of the contract was not as matter of law conclusive against him.

The statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fifth, did not warrant the ordering of a verdict for the defendant at the trial of an action for breach of an oral contract of employment where there was evidence warranting a finding that the contract was made on the twenty-fourth of a month to run for one year from that date, work to begin on the twenty-fifth.

Contract, by amendment from a bill in equity filed in the Superior Court on May 15, 1934.

The action was tried before *Keating*, J., who ordered a verdict for the defendant. After the death of the trial judge, the action was reported by *Sheehan*, J.

*R. T. Parke*, (*A. W. Ingalls* with him,) for the plaintiff.

*G. I. Cohen*, (*V. D. Bowen* with him,) for the defendant.

Pierce, J.    This is an action of contract based on an oral agreement between the parties, whereby the defendant was to hire the plaintiff as a superintendent on a construction job at an agreed compensation of $100 a week for one year. The defendant denied the making of said alleged agreement, and further pleaded that the contract declared on was a contract not to be performed within a year, and that it was not in writing as required under G. L. (Ter. Ed.) c. 259, § 1, Fifth. At the close of the evidence, on the motion of the defendant the presiding judge directed a verdict for the defendant. The plaintiff excepted thereto, and by agreement of the parties the case was reported to this court with the agreement that "if the Supreme Judicial Court finds that the presiding judge was correct in directing a verdict for the defendant, judgment shall be entered for the defendant, but that, in the event that the Supreme Judicial Court finds that the presiding judge erred, and should have allowed the case to go to the jury, judgment shall be entered for the plaintiff in the sum of $1,500, which sum shall be accepted by the plaintiff in full settlement of all claims under his contract."

The report contains all the material evidence necessary to decide the point in issue. "There was evidence that the defendant company was a bidder for a certain contract to construct a bridge over the Fore River. That prior to January 15, 1934, the chief engineer of the department of public works of Massachusetts refused to recommend to the commissioners of the department of public works that the defendant company be awarded the said contract because he was not satisfied that it had a man in its organization to satisfactorily superintend the construction of the piers to be erected in the Fore River to support the said bridge. That January 15, 1934, the defendant's duly authorized representative, Vincenzo Barletta, also called V. Barletta, president and treasurer of the V. Barletta Co., had a talk with the plaintiff and offered employment to the plaintiff for a year as its superintendent in the construction of the piers and abutments for said bridge, if the defendant secured the contract. That on the following day the plaintiff and

the said Barletta met by appointment in the office of the surety company which was considering going on the bond of the defendant required by the contract and that the said Barletta told the representative of the surety company that the plaintiff was to be his superintendent in the event that the defendant secured the contract. That on the same day the said Barletta and the plaintiff went together to the office of the chief engineer of the department of public works, which was to award the contract, and that the said Barletta informed the chief engineer of the said department that the plaintiff was to be his superintendent in the event that the defendant secured the contract. That, following the visits before mentioned, the chief engineer recommended to the commissioners of the department of public works that the defendant be awarded the contract subject to the approval of the Governor and Council. That on the 24th day of January, 1934, the Governor and Council approved the awarding of the contract for said bridge to the defendant. That in the evening of January 24, 1934 there was a talk between the plaintiff and said Barletta. That the said Barletta then told the plaintiff that the Governor and Council had approved the contract that day and that everything was all right and that the plaintiff could tell his boss he was through. That the following morning the plaintiff began work for the defendant and occupied himself from that time on in examining plans and specifications, inspecting the site of the proposed bridge, and making plans for the purchase of equipment and material for the work. That on February 5, at the field office of the defendant company, the said Barletta refused to give the plaintiff authority to consult with the resident engineer representing the department of public works on the job regarding the work to be done, and definitely told the plaintiff that he was not to be superintendent of the work. That thereafter the plaintiff considered the contract as broken and made reasonable efforts to secure other employment, without success, up to the date of the bringing of the writ."

Based on a verbatim report of the evidence shown in the record before this court, the defendant contends that there

was no meeting of the minds of the parties in respect to the status of the plaintiff under the oral contract of employment, and that consequently there was no contract.

The statement dated January 16, 1934, written on paper bearing the business heading of the defendant, which reads: "I Mr. O. S. Heyer . . . have been engaged to work for the V. Barletta Co. . . . on their Fore River Bridge Job between Weymouth and Quincy as Supt. to have charge of the construction of the Piers in the water at the salary of $100.00 per week," is consistent with the defendant's contention that the contemplated employment of the plaintiff was that of superintendent in charge of a certain portion of the work, at the salary of $100 per week; but it did not preclude, as a matter of law, a finding that the actual oral agreement was that the plaintiff should be "superintendent of the whole job." In this regard the evidence most favorable to the plaintiff presented an issue of fact for the jury.

If it be assumed that the evidence for the plaintiff precluded a direction of a verdict for the defendant based on the theory that there was no contract between the parties as to the position which the plaintiff was to hold, the defendant contends that the contract, which the plaintiff's evidence tended to support and which, the jury would be warranted in finding, was made, was not enforceable under G. L. (Ter. Ed.) c. 259, § 1, which reads: "No action shall be brought . . . Fifth, Upon an agreement that is not to be performed within one year from the making thereof; Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized."

The defendant's president and treasurer, Vincenzo Barletta, hereinafter called Barletta, who was duly authorized to represent the defendant, testified in substance that in consequence of a talk with one Dean, the chief engineer of the department of public works, he sent for the plaintiff and on January 13, 1934, had a conversation with him in reference to his familiarity with the class of work for which a superintendent was needed. On January 15, 1934, the

plaintiff and Barletta again met and Barletta said: "If I get this job how much would you work for me for," and the plaintiff said: "For that kind of heavy work, a lot of risk, it is worth more than $125 a week." Barletta said: "I couldn't do it at prices they are getting today"; so $100 was agreed on, and Barletta said: "Mr. Heyer, if I get this job, you come to work for me at $100 a week every week you are on the job."

In respect to this conversation of January 15, 1934, the plaintiff testified that Barletta said: "How much money do you want?" and he answered, "$125 a week"; that Barletta then said, "I will give you $100 a week," and the plaintiff said, "All right, I will accept that, but . . . I must know how long the job is for . . . In six or seven months, or the time the difficult work is done, you will want to drop me on account of lessening the expenses"; that Barletta said, "I will give you a contract for a year," and the plaintiff said, "That is satisfactory"; and that Barletta then said, "Meet me tomorrow morning at the Forest Hills Station about half past eight." The plaintiff further testified that they met as agreed and went to the office of the American Surety Company; that he was there introduced by Barletta "as the man who was to be superintendent on the Fore River job if he [Barletta] got the contract"; that then they went to the office of Dean, and Barletta said, "This man is the man I have employed, or will employ, on the job as superintendent"; and that Dean asked the plaintiff, "Are you going to work for Barletta as his superintendent?" and the plaintiff said, "I am, if he gets the job." In reference to these conversations the plaintiff testified in substance that he did not believe when he had finished his talk with Barletta that he had closed the contract with him, and that his employment was conditional on his (Barletta's) securing his contract. The plaintiff further testified, in substance, that from January 15, 1934, until January 24, 1934, he had no further communication with Barletta, except to give to his son on January 18, 1934, the written statement of "my experience and so forth", dated January 16, 1934, above quoted, to submit to the surety company; that on

January 24, 1934, in the evening at about eight o'clock, he called Barletta at his house and had a conversation with him; that he recognized Barletta's voice and asked him if the Governor and Council had approved the contract; that Barletta said they had, "Everything is all right . . . You can tell your boss you are through"; and that he told Barletta that he "would require that he give . . . [the plaintiff] a year's contract with the terms on the previous occasion," and Barletta said, "My word is good, but I will give it to you." He testified "there was no written contract; an oral one."

On February 13, 1934, the plaintiff wrote Barletta the letter which reads: "I have to date received no money from you due me under the terms of my contract: — one hundred dollars a week for one year. My contract went into effect January 25th 1934 so that tomorrow there will be due me three hundred dollars. I expect a check for this amount and a check for one hundred dollars each week thereafter until the expiration of my contract." The plaintiff testified that he told his attorney that the contract was to run from January 25, 1934, when the plaintiff was actively employed; and that the contract was consummated on January 24.

It is plain on a consideration of all the evidence that the judge could not have ruled, rightly, that the contract was made on January 15, 1934, to become effective upon the letting of the construction contract to the defendant with the approval of the Governor and Council. It is plain also that if an oral contract was closed on January 15, 1934, which was to continue for one year after the allotment of the contract to the defendant, the contract of the defendant with the plaintiff was not enforceable under G. L. (Ter. Ed.) c. 259, § 1, Fifth. It is equally clear that if the contract was made on January 24, 1934, to become effective on January 25, 1934, the contract was within that statute, and not enforceable against the defendant. *Raymond* v. *Phipps*, 215 Mass. 559. Williston on Contracts, § 502 and cases cited. The plaintiff, however, contends that the contract was made and closed on January 24, 1934, and

ran for one year from that date although the plaintiff was not actively employed until January 25, 1934, invoking in support of this position the general rule that when an act is to be done within a given number of days from the date, or day of the date, or act done, the day of the date is excluded, otherwise an act to be done in one day must be done on the same day; and as there is no fraction of a day, such a stipulation must create an obligation to do it *instanter*. *Seekonk* v. *Rehoboth*, 8 Cush. 371, 373, 374. *Marcellino, petitioner*, 271 Mass. 323, 324. *Sweeney* v. *Morey & Co. Inc.* 279 Mass. 495, 502. We think the case at bar presents an issue of fact for the jury; that the direction of a verdict for the defendant was error; and that judgment should be entered for the plaintiff, as stipulated, in the sum of $1,500.

*So ordered.*